E-FILED
Friday, 11 February, 2022  11:58:44 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TINA ANN PASQUENO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-3270 |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Tina Ann Pasqueno appeals from the denial of her application for Social Security Disability Insurance Benefits (Disability Benefits) under Title II of the Social Security Act.  42 U.S.C. §§ 416(i) and 423.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Pasqueno filed a Motion for Summary Judgment (d/e 16).  The Defendant Acting Commissioner filed a Motion for Summary Affirmance (d/e 18).  Pasqueno filed a Reply Brief (d/e 19).  The parties consented to proceed before this Court.  Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered October 27, 2020 (d/e 8).

---

[1] The Court takes judicial notice that Dr. Kilolo Kijakazi, Ph.D., is now the Acting Commissioner of Social Security.  As such, she is automatically substituted in as the Defendant in this case.  Fed. R. Civ. P. 25(d).

For the reasons set forth below, the Decision of the Acting Commissioner is affirmed.

## BACKGROUND

Pasqueno was born on March 11, 1983 and she completed the tenth grade. She previously worked as a telephone solicitor, assistant manager at a restaurant, and a waitress. She protectively filed her application for Disability Benefits on January 1, 2018 and alleged that she became disabled on January 1, 2018 (Onset Date). The last date she qualified to receive Disability Benefits was December 31, 2019 (Last Date Insured). Pasqueno suffered from major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), restless leg syndrome, and obesity. Certified Transcript of Proceedings before the Social Security Administration (d/e 13) (R.) at 15, 17, 25, 37, 689.

## STATEMENT OF FACTS

### Evidence before the Evidentiary Hearing

On March 28, 2017, Pasqueno saw psychiatrist Dr. Yae Rim Lee, M.D. for a follow up on depression and anxiety.[2] She reported her mood was "Decent." She still had bad days with crying and her anxiety was

---

[2] Plaintiff's last name was Stone at the time of this office visit. Pasqueno legally married Angela Pasqueno (Angela) in approximately January 2018 and changed her last name to Pasqueno. See R. 938.

better some days; her energy was high; she had some problems falling asleep; she denied suicidal ideations.  On examination, Dr. Lee noted no change in her mental status.  R. 293-94.  Pasqueno's insight and judgment were fair. R. 296.  Dr. Lee diagnosed major depressive disorder, recurrent, moderate, and generalized anxiety disorder and assigned Pasqueno a Global Assessment of Functioning (GAF) score of 65.  R. 294.  A GAF score of 61-70 indicates some mild symptoms or some mild difficulty in social, occupational, or school functioning; but generally functioning pretty well and the person has some meaningful interpersonal relationships.  American Psychiatric Association (APA), Diagnostic and Statistical Manual of Mental Disorders (4th ed. text rev. 2000) (DSM-IV-TR), at 34.  The APA stopped using GAF scores in 2013.  APA, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5 or DSM-V), at 16.

On April 25, 2017, Pasqueno saw physician's assistant Donna Rasmussen PA-C for restless leg syndrome.  She had leg cramps and spasms multiple times at night in bed.  R. 302.  On examination, Pasqueno was five feet three inches tall, weighed 244.60 pounds, and had a body mass index (BMI) of 43.33.  R. 304.  She was oriented with an appropriate mood and affect.  R. 305.

On May 25, 2017, Pasqueno saw Dr. Lee.  She was doing okay and reported having good days most of the time.  She woke up with anxiety sometimes, but her energy was pretty good and she slept "pretty good."  Pasqueno's mental status was unchanged.  R. 306-07.  Her insight and judgment were fair.  Dr. Lee found that Pasqueno was making good progress.  He assigned a GAF score of 65.  R. 308-09.

On November 30, 2017, Pasqueno saw Dr. Lee.  She was doing okay.  She was taking longer to fall asleep and her restless leg syndrome was somewhat controlled with medication.  She denied any suicidal or homicidal ideations and denied any adverse reactions from her medications, other than restless leg syndrome.  R. 339.  On examination, Pasqueno's mental status was unchanged.  R. 340.  Dr. Lee assigned a GAF score of 66.  R. 344.

On January 22, 2018, Pasqueno saw licensed clinical social worker Brian Stoops, LCSW, for counseling.  Stoops found no significant change in Pasqueno's mental status.  R. 938.  He assessed major depressive disorder, recurrent, moderate; and generalized anxiety disorder.  Stoops assigned Pasqueno a GAF of 66.  R. 941.

On February 2, 2018, Pasqueno again saw Stoops for counseling. She had no significant change in her mental status.  R. 953.  Pasqueno's diagnosis remained the same and her GAF score remained at 66.  R. 956.

On March 9, 2018, Pasqueno saw Dr. Lee. She was having a difficult time because her father passed away on February 27, 2018.[3]  She reported her anxiety was worse, she was getting nauseous from anxiety, and she had low energy.  She denied having suicidal or homicidal ideations.  On examination, Pasqueno's mood was tearful, but mental status otherwise had not changed.  R. 387.  Dr. Lee assigned a GAF score of 63. R. 392.

On April 25, 2018, Pasqueno saw Dr. Lee.  She was doing about the same.  She said she had many worries and lacked motivation.  She reported that she cried often and her sleep was "off and on."  She denied any suicidal or homicidal ideations.  R. 408.  On examination, Pasqueno's mental state was unchanged.  R. 409.  Pasqueno's insight and judgment were fair and she was making some progress.  R. 410.  Dr. Lee assigned a GAF score of 63.  R. 414.

---

[3] The person who died may have been Pasqueno's grandfather.  See R. 47 (Pasqueno testified that her symptoms worsened after her grandfather died in February 2018.).

On May 24, 2018, Pasqueno saw Dr. Lee.  She reported that she was not doing well.  She had problems sleeping at night, was anxious and worried "about everything," cried often, and had no energy or motivation other than to care for her grandmother.  She denied any suicidal or homicidal ideations.  R. 442.  On examination, Pasqueno's mental status was unchanged and her insight and judgment were fair.  She was making some progress.  R. 444.  Dr. Lee assigned a GAF score of 63.  R. 447.

On June 8, 2018, Pasqueno saw PA Rasmussen.  She reported being more forgetful recently.  R. 622.  Rasmussen diagnosed forgetfulness and major depressive disorder, recurrent, moderate.  Rasmussen stated that a there was a strong possibility that Pasqueno's combination of medications was contributing to or causing her forgetfulness.  R. 621-22.

On June 25, 2018, Pasqueno saw Dr. Lee.  She reported having more bad days than good.  She reported hearing someone yelling her name at night.  She denied seeing any visual hallucinations.  She was only sleeping two to three hours a night and  reported being sad and tired.  She reported feeling overwhelmed by anxiety and being worried about her grandmother dying.  On examination, her mental status was unchanged.

R. 1038.  Her judgment and insight were fair, and she was making some progress.  R. 1039.  Dr. Lee assigned a GAF score of 63.  R. 1042.

On July 26, 2018, Pasqueno saw Dr. Lee.  She was doing "so so."  She was having three bad days a week, had bad dreams three to four times a week, and still heard her grandmother calling her name.  She reported being forgetful and unable to concentrate; she described her mood as agitated, angry, and sad; she had low energy and motivation; her sleep was not good; she denied any suicidal or homicidal ideations.  R. 1058.  On examination, her mental status was unchanged.  R. 1059.  Her insight and judgment were fair, and she was making some progress.  R. 1060.   Dr. Lee assigned a GAF score of 64.  R. 1063.

On August 14, 2018, state agency psychologist Dr. Dolores Trello, Psy.D., conducted a mental status examination of Pasqueno.  Pasqueno reported that she disliked change; had anger issues; was unmotivated; and had no energy.  She had difficulty falling asleep at night and she worried and had bad dreams.  She said she heard voices in the past, but not now.  She had social anxiety and woke up between 10:00 and 11:00 am and went to sleep between 1:00 and 2:00 am.  She did not cook or do any housework; she did not pay bills or handle money; she used public transportation; she reported that her concentration was poor.  R. 689.  On

examination, Pasqueno was oriented and had a normal affect; her speech was relevant and coherent; she did not have hallucinations, delusions, psychosis, or thought disorder; her memory was intact; she was adequately informed; she had problems with serial 7s and could not provide an abstract meaning to proverbs; she could solve hypothetical situations.  Dr. Trello concluded that Pasqueno suffered from social anxiety, generalized anxiety disorder, panic attacks, and major depressive disorder.  Dr. Trello opined that Pasqueno needed someone to handle funds for her.  R. 690-92.

On August 23, 2018, state agency psychologist Dr. Howard Tin, Psy.D., prepared a Psychiatric Review Technique.  R. 59-60.  Dr. Tin opined that Pasqueno had mental impairments of a depressive, bipolar, and related disorder; and anxiety and obsessive-compulsive disorder.  Dr. Tin opined that her mental impairments had no effect on Pasqueno's ability to concentrate, persist, or maintain pace; no effect on her ability to adapt or manager oneself; mild effect on her ability to understand, remember, or apply information; and mild effect on Pasqueno's ability to interact with others.  R. 59.  Dr. Tin concluded that Pasqueno's mental impairments were non-severe.  R. 59.

On September 4, 2018, Pasqueno saw Dr. Lee.  She was doing about the same; she was not sleeping well and was tired during the day; she was having good days and bad days; she reported no energy or motivation; her anxiety was about the same.  R. 1082.  She denied having suicidal or homicidal ideations.  On examination, Pasqueno's mental status was unchanged.  R. 1083.  Her insight and judgment were fair, and she was making some progress.  R. 1084.  Dr. Lee assigned a GAF score of 64.  R. 1087.

On October 2, 2018, Pasqueno saw mental health nurse practitioner (NP) Sandra Cania, PMHNP, for a psychiatric diagnostic evaluation.  R. 1109-17.  Pasqueno reported that she had trouble falling asleep and staying asleep.  She got four to five hours sleep at night and napped during the day.  Cania instructed her on sleep hygiene and told her "no naps during day, no caffeine, no electronics, regular exercise."  Pasqueno said she was anxious all the time and got anxious in large groups.  She also said she had no motivation, low energy, concentration problems, and restless leg syndrome.  R. 1114-15.

On examination, Pasqueno had a depressed, anxious mood; a full affect; normal posture; average eye contact; normal activity; clear speech; logical thought process; normal perception; normal cognition; and average

intelligence.  Pasqueno's thought content included preoccupations, ruminations, and obsessional depressive thoughts.  She denied having hallucinations, delusions, or suicidal ideations. R. 1110-11, 1116.  Cania diagnosed major depressive disorder, generalized anxiety disorder, and fatigue.  Cania assigned a GAF score of 64.  R. 1112.

On October 16, 2018, Pasqueno saw NP Cania for medication management and psychotherapy.  Pasqueno had no adverse reactions to her medications.  She experienced extreme anxiety and panic with no known triggers and almost left the waiting room because of the number of people in there.  "Little stuff aggravates her. Can't be around a lot of people."  She reported getting three hours of sleep a night.  She said that her energy level was not good, she had no motivation, and her concentration was bad.  She denied any suicidal thoughts. R. 1118.  On examination, Pasqueno had a depressed mood; a full affect; clear speech; logical thought process; her posture, perception, thought content, cognition, insight, and judgment were within normal limits; her eye contact and intelligence were average; and she had no hallucinations or delusions.   R. 1119, 1123-24.  Cania diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; and fatigue. She assigned a GAF score of 64.  R. 1124.

On October 29, 2018, Pasqueno prepared a Function Report-Adult form.  R. 215-22.  She stated she could not work because of her depression and anxiety and had panic attacks three to four times a week, recurring bad dreams, and daily crying spells.  She lacked motivation and got three to four hours of sleep at night. She was agitated easily, and she could not be around other people.  R. 215.  Pasqueno described her daily activities, "Wake up—sit in room by myself with no one around—until bedtime."  R. 216.  She stayed in her pajamas all day and bathed once every five to six days.  She combed her hair every two to three days.  R. 216.  She needed reminders to bathe and take medication and she did not cook or do housework or yardwork.  She said she left the house only for appointments with her counselor or psychiatrist and used public transportation to travel. She did not go out alone because she got agitated around other people.  She shopped for groceries once a month when no one else was around and did not pay bills or use a checkbook.  R. 217-18. She said she used to read and watch television, but she no longer did so because of her inability to concentrate and she did not socialize.  R. 218-19.

Pasqueno opined that her impairments limited her ability to remember, complete tasks, concentrate, and get along with others.  She

could pay attention for less than five minutes, and she did not finish what she started.  She could not follow spoken instructions because of memory loss.  She could not get along with others and said she was fired from her restaurant job at Burger King due to depression and anxiety.  She did not handle stress or changes in routine.  She worried about, "Anything and Everything."  R. 220-21.

On October 30, 2018, Pasqueno's spouse Angela completed a Function Report-Adult-Third Party form.  R. 225-32.  Angela's statements on the form were substantially similar to Pasqueno's responses on her Function Report.  Angela added that Pasqueno spent the day sitting on the back porch worrying or crying.  R. 226.  Angela also said that Pasqueno listened to music and sometimes watched television but did so rarely because her attention span was short.  R. 229.

On November 1, 2018, Pasqueno saw NP Cania.  She reported no adverse medication reactions.  She took three to four hours to fall asleep because her mind raced and she worried "about everything."  She slept during the day and reported that her motivation and concentration were low.  She was constantly anxious and restless and she had visible tremors. R. 1128.  On examination, she had a depressed mood and a full affect; her thought content included preoccupations and ruminations; her thought

process was logical; her perception, cognition, insight, and judgment were within normal limits; her eye contact and intelligence were average; and she had no hallucinations or delusions.  R. 1129, 1133-34.  Cania diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; fatigue; and mood disorder.  Cania assigned a GAF score of 64.  R. 1134.

On November 9, 2018, Pasqueno saw NP Cania.  She reported no change in her anxiety and panic attacks since the last visit and said she still had nightmare two to three times a week.  She worried about everything and reported decreased concentration and focus.  R. 1138.  Cania assessed no significant change in Pasqueno's mental status since the last visit.  R. 1138-39.  NP Cania assigned a GAF score of 64.

On December 30, 2018, state agency psychiatrist Dr. Stephen Kleinman, M.D., prepared a Psychiatric Review Technique.  R. 73-74.  Dr. Kleinman opined that Pasqueno had mental impairments of a depressive, bipolar, and related disorder; and anxiety and obsessive-compulsive disorder.  Dr. Kleinman opined that her mental impairments had no effect on Pasqueno's ability to concentrate, persist, or maintain pace; no effect on her ability to adapt or manage oneself; mild effect on her ability to understand, remember, or apply information; and mild effect on Pasqueno's

ability to interact with others.  R. 59.  Dr. Kleinman concluded that Pasqueno's mental impairments were non-severe.  R. 59.

On January 29, 2019, Pasqueno saw psychiatrist Dr. Carmen Orellana, M.D., for depression and anxiety.  She reported that her symptoms had gotten worse of the last year, she had problems sleeping, and her appetite was down.  R. 1498.  On examination, Pasqueno had normal speech, anxious mood, sad and anxious affect, logical thought process, intact abstraction, intact judgment, and intact insight.  Dr. Orellana assessed major depressive disorder, recurrent, severe without psychosis; generalized anxiety disorder; and rule out PTSD.  R. 1501.

On July 16, 2019, Pasqueno saw Dr. Orellana.  On examination, Pasqueno's appetite was down and she was having trouble sleeping.  She did not have hallucinations, delusions, paranoia, suicidal ideations, or homicidal ideations, her insight was fair, and she was oriented.  Dr. Orellana diagnosed major depressive disorder, recurrent, severe without psychosis; generalized anxiety disorder, and PTSD.  R. 1497.

On August 20, 2019, Pasqueno again saw Dr. Orellana.  On examination, Pasqueno's sleep was a concern; her appetite was unremarkable; she had no delusions, hallucinations, paranoia, or suicidal or homicidal ideations.  Her insight was fair and she was oriented.  Dr.

Orellana diagnosed major depressive disorder, severe without psychosis;

general anxiety disorder; and PTSD.  R. 1496.

On October 13, 2019, psychologist Dr. Katherine Ancell, Ph.D.,

performed a Psychological Evaluation of Pasqueno.  R. 1492-94.  Dr.

Ancell administered a Wechsler Adult Intelligence Scale Fourth Edition

(WAIS-IV) test (IQ Test) to Pasqueno.  Her scores were:

| Index/IQ | Score | Percentile Rank |
| --- | --- | --- |
| Verbal Comprehension | 63 | 1 |
| Perceptual Reasoning | 60 | 0.4 |
| Working Memory | 60 | 0.4 |
| Processing Speed | 56 | 0.2 |
| Full Scale IQ Score | 54 | 0.1 |

Dr. Ancell concluded that Pasqueno had very low intellectual

functioning.  Dr. Ancell did not opine that she had an intellectual disability,

but opined that she was not employable:

> Overall, Tina has very low intellectual functioning, the lowest
> among the norming population.  The DSM-V uses three
> diagnostic features to classify someone as having an
> intellectual disability; in addition to intellectual functioning,
> adaptive functioning and age of onset all must be considered.
> Her adaptive functioning was informally assessed during the
> clinical interview and is considerably delayed.  Tina cannot do
> basic daily living tasks on her own (cooking, shopping, driving,
> etc.) and her social skills are also not typical for someone her
> age.  She reports very few, typical social interactions or leisure

activities.  However, many of these delays could, and are most
likely due to her mental health diagnoses of anxiety,
depression, and PTSD.  Age of onset is also difficult to identify
in this case.  Special education was not, although that is not to
say delays were not present. Although she does not meet all
DSM diagnostic criteria for a person with an intellectual
disability, her intellectual functioning is greatly impaired.  A
person with a cognitive profile such as hers will have a difficult
time gaining meaningful employment.  Additionally, Tina's
mental health difficulties do not currently allow for employment.

R. 1494.

On November 19, 2019, Dr. Orellana completed a form entitled Social

Security Administration Listing of Impairments.  R. 1531-46.  Dr. Orellana

Opined that Pasqueno's impairments met Listings 12.04, 12.06, and 12.15

for depression, anxiety, and PTSD, respectively.    The Listings are a

detailed set of medical impairments listed in the Social Security regulations

that render an unemployed person disabled regardless of her age,

education, or work experience.  20 C.F.R. Part 404 Subpart P, Appendix 1

(Listing); see 20 C.F.R. §§ 404.1520(d), 416.920(d).  Dr. Orellana stated

that Pasqueno had severe depressed mood, low energy, and low

motivation, severe anxiety, difficulty leaving home, and nightmares.  Dr.

Orellana's assessment of Pasqueno's functional limitations were based on

clinical encounters and not at-work environments.  R. 1533, 1542, 1549.

Dr. Orellana opined on Pasqueno's functional limitations in the Part B

categories of these three Listings.  Part B of these Listings list four

categories of functioning, consisting of the ability: (1) to understand, remember, or apply information; (2) to maintain concentration, persistence, or pace; (3) to interact with others; and (4) to adapt or manage oneself.  A person meets the Paragraph B requirements of each of these Listings if she has severe limitations in one area or marked limitations in two areas.  Dr. Orellana had insufficient evidence to opine on Pasqueno's ability to understand, remember, or apply information, and her ability to maintain concentration, persistence, or pace.  Dr. Orellana opined that Pasqueno had marked limitations in her ability to interact with others and to adapt or manage oneself.  R. 1539, 1546, 1553.

## The Evidentiary Hearing

On December 5, 2019, an Administrative Law Judge (ALJ) conducted an evidentiary hearing.  R. 33-54.  Pasqueno appeared in person and with her attorney.  Vocational expert Mark Anderson also appeared by telephone.  R. 35.

Pasqueno testified first.  She lived with her grandmother and Angela. She last worked in 2014 as a telemarketer and stopped working when her employer closed.  She had a driver's license but lost it five or six years earlier due to a DUI conviction.  R. 38-39.

Pasqueno testified that she could not work because she had difficulty being around other people, even one other person.  She said "I start to panic and stress out.  I have to leave the room."  R. 40.  Pasqueno said that her panic attacks lasted 15 to 25 minutes and she had to isolate herself to calm down.  R. 42.  Her antianxiety medication did not work.  R. 43.  She had panic attacks three to four times a week.  R. 44.  When she went to the doctor or counselor, she could not sit in the waiting room if other people were there.  She went into the hall and paced back and forth. She interacted with receptionists and store clerks when necessary, but she still had anxiety.  R. 45.

Pasqueno said she had no motivation.  She cried and lay in bed daily and said, "I deal with it every day."  She has left the offices of her psychiatrist and counselor because she experienced panic attacks and she testified that she was "paranoid all the time."  She stopped going grocery shopping and a friend shopped for her.  Angela could not go shopping because she was physically disabled.  R. 40-41.  She also did not have the motivation to finish tasks.  She would start to do the laundry and not complete the task.  She usually spent her day in bed and did not watch television or read.  She just lay there as she could not concentrate to watch

television or read.  If she got up, she spent time with Angela and her grandmother.  R. 45-46.

Pasqueno, however, also testified that she did the laundry and cleaned the home.  She said that Angela could not help because Angela was physically disabled.  Sometimes her grandmother helped, but she was 87 and could not help much.  Pasqueno and Angela split the cooking duties about "50/50."  R. 47-49.

Pasqueno said she had trouble getting to sleep at night.  R. 45-46. She said she was in an abusive relationship in the past, and she had nightmares of people chasing her and nightmares about death.  R. 47. Pasqueno got angry and aggravated often.  She got aggravated with other people and her symptoms got worse when her grandfather died in February 2018.  R. 47-48.

Vocational expert Anderson then testified.  Anderson classified Pasqueno's past relevant work as telephone solicitor, sedentary, semiskilled; assistant manager, light, skilled; and waitress, light, semiskilled.  R. 51.

The ALJ asked Anderson the following hypothetical question:

I'd like for you to consider a younger individual with a limited education and past work consistent with that you described for the claimant; further consider the individual would be limited to a range of light work involving no climbing of ladders, ropes or

scaffolds; the individual can attend to and complete routine and repetitive tasks; the individual can no more than occasionally interact with the public or coworkers; given those restrictions, would the individual be able to perform the prior functions of the claimant's past work?

R. 50-51.  Anderson opined that such a person could not perform Pasqueno's past relevant work.  Anderson said that the person could perform other jobs such as inspector and hand packager at the light level with 139,000 such jobs in the national economy; small product assembler at the light level with 217,000 such jobs in the national economy; electronics worker at the light level with 244,000 such jobs in the national economy.  Anderson said these jobs were examples of the types of jobs the person could perform.  R. 52.

Anderson also opined that the person could not work if she had to arrive late, be absent, or leave early more than two days a month.  R. 52-53.  The person could not work if she was off-task four to five times a week for 15 to 30 minutes each time.  The person also had to be able to work by herself.  R. 53.  The hearing ended.

## THE DECISION OF THE ALJ

The ALJ issued his decision on February 7, 2020.  The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the

claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).  To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified the Listings.  If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f).  If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden at Step 5 to present evidence that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  20 C.F.R. §§

404.1512, 404.1560(c); <u>Weatherbee v. Astrue</u>, 649 F.3d 565, 569 (7th Cir.

2011); <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ found that Pasqueno met her burden at Steps 1 and 2.  She

had not engaged in substantial gainful activity since the Onset Date and

she suffered from the severe impairments of major depressive disorder,

generalized anxiety disorder, PTSD, restless leg syndrome, and obesity.

R. 17-18.

The ALJ found at Step 3 that Pasqueno's impairments or combination

of impairments did not meet or equal a Listing.  The ALJ considered the

Listings 12.04, 12.06, and 12.15 for affective disorders including

depression, anxiety disorders, and PTSD.  The ALJ looked at the

Paragraph B criteria that were the same in these three Listings.  R. 18-20.

The ALJ found that Pasqueno's mental impairments caused moderate

limitations in all four areas of understanding, remembering, or applying

information; interacting with others; and concentrating, persisting, or

maintaining pace; and adapting or managing oneself.  The ALJ relied

primarily on mental status examinations that the ALJ found to be "generally

mild or benign."  R. 19.  The ALJ also noted that Pasqueno did not seek

emergency or urgent care for her psychologically based symptoms.  R. 20.

The ALJ then found that Pasqueno had the following RFC:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds.  She could attend to and complete routine, repetitive tasks and could occasionally interact with public and coworkers.

R. 20.  The ALJ relied on evidence that Pasqueno had conservative mental health treatment with "consistently normal mental status examinations."  R. 22. The ALJ relied on Dr. Trello's examination in which she found Pasqueno to be alert, oriented, with normal mood, normal speech, and intact memory.  The ALJ also noted that Pasqueno's primary care providers noted consistently said that Pasqueno was oriented with appropriate mood and affect, and normal insight and judgment.  R. 22.

The ALJ acknowledged that IQ testing showed borderline intellectual functioning.  The ALJ discounted that testing because Pasqueno was able to complete the 10th grade without special education classes, secured a driver's license, lived independently, worked semiskilled and skilled jobs, and had generally normal mental status examination.  The ALJ also specifically found no evidence that Pasqueno had a medically determined intellectual disorder prior to the age of 22 years.  The ALJ found no evidence that Pasqueno could not perform routine, repetitive tasks as set forth in the RFC.  R. 22-23.

The ALJ discounted Pasqueno's statements about her functional limitations caused by her symptoms and relied on the medical evidence discussed earlier and the evidence that Pasqueno engaged in daily activities of living such as caring for herself, preparing meals, performing chores, watching television, managing finances, shopping for groceries, and spending time with Angela, her grandmother, and a friend.  R. 23.

The ALJ did not find persuasive the opinions of state agency psychiatrist Dr. Kleinman or psychologist Dr. Tin that Pasqueno's mental impairments to be non-severe.  The other evidence presented showed a greater level of impairment.  R. 24.

The ALJ also did not find persuasive the opinions of Dr. Ancell that Pasqueno could not work due to her mental impairments.  The ALJ noted that Dr. Ancell found that the diagnostic criteria for intellectual disability was not met.  The ALJ also relied on the evidence that showed Pasqueno had a higher level of intellectual functioning:  she completed the 10th grade without special education classes, she secured a driver's license, she lived independently, and she worked semiskilled and skilled jobs.  The ALJ also stated that the conclusion that a person was disabled was a matter reserved to the Commissioner.  R. 24.

The ALJ additionally found Dr. Orellana's November 2019 opinions not to be persuasive.  Dr. Orellana only saw Pasqueno three times in January, July, and August 2019.  Dr. Orellana found Pasqueno to have normal speech, appearance, thought processes, and thought content in her January 2019 visit and did not make contrary observations in the two later visits.

The ALJ discounted the GAF scores because GAF scores have a subjective component and the APA no longer uses the scores as reflected in the DSM-V. R.24-25.

The ALJ found at Step 4 that Pasqueno could not perform her past relevant work.  The ALJ relied on the RFC and the opinions of vocational expert Anderson.  At Step 5, the ALJ found that Pasqueno could perform a significant number of jobs that existed in the national economy.   The ALJ relied on RFC, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 1, and the opinions of vocational expert Anderson that a person with Pasqueno's age, education, work experience, and RFC could perform the representative jobs of inspector/hand packager, assembler of small products, and electronics worker.  R. 26.  The ALJ concluded that Pasqueno was not disabled through the Date Last Insured.  R. 27.

Pasqueno administratively appealed.  On September 16, 2020, the Appeals Council denied Pasqueno's request for review.  The decision of the ALJ then became the final decision of the Defendant Acting Commissioner.  R. 1.  Pasqueno then filed this action for judicial review.

ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must accept the findings if they are supported by substantial evidence and may not substitute its judgment or reweigh the evidence.  Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the ALJ's evaluation of statements regarding the intensity, persistence, and limiting effect of symptoms unless the evaluation is patently wrong and lacks any explanation or support in the record.  See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2014); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008); SSR 16-3p, 2017 WL 5180304, at *1 (October 25, 2017) (The Social Security Administration no longer uses the term credibility in the evaluation of statements regarding symptoms).  The ALJ must articulate at least

minimally his analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ must "build an accurate and logical bridge from the evidence to his conclusion."  Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The decision of the Commissioner is supported by substantial evidence.[4]  The consistent normal or near normal mental status examinations, particularly those by NP Cania, supported the ALJ's findings of moderate limitations in the paragraph B areas in Listings 12.04, 12.06, and 12.15.   The mental status examinations also supported the RFC findings.  The ALJ adequately explained the basis for his treatment of the medical opinions of Drs. Ancell and Orellana.  Dr. Ancell's findings of very borderline intellectual functioning was inconsistent with the facts that Pasqueno completed the 10th grade without attending special education classes, secured a driver's license, lived independently, and worked semiskilled jobs as a telemarketer and waitress, and a skilled job as a restaurant assistant manager.  Dr. Orellana only saw Pasqueno three times and Pasqueno's mental status examinations by Dr. Orellana and others were not consistent with her opinions on Pasqueno's functional limitations.[5]

---

[4] Pasqueno does not challenge the ALJ's findings regarding her physical impairments so the Court does not address those findings.
[5] The ALJ erroneously stated that Dr. Orellana only saw Pasqueno after the Date Last Insured.  R. 24. Pasqueno saw Dr. Orellana in January 2019, July 2019, and August 2019, all before the Date Last

The RFC and the opinions of vocational expert Anderson supported the conclusion that Pasqueno could perform a significant number of jobs in the national economy.  The decision was supported by substantial evidence.

Pasqueno argues that the ALJ erred in failing to find that she met the Listing 12.05 for intellectual disability.  The ALJ did not expressly mention Listing 12.05.  The ALJ, however, made findings that showed that Pasqueno could not meet this Listing.  Listing 12.05 requires evidence that Pasqueno's intellectual impairments existed prior to the age of 22 years.  Listing 12.05(C).  The ALJ found no evidence that Pasqueno's problems with a low IQ existed before she was 22 years old.  The ALJ cited evidence that Pasqueno completed the 10th grade without attending special education classes, secured a driver's license, lived independently, and worked two semiskilled jobs and a skilled job.  The ALJ thereby found that Pasqueno did not meet a necessary requirement to qualify for Listing 12.05 and the evidence cited by the ALJ constituted substantial evidence to support the finding.  The ALJ may have needed to mention Listing 12.05, but any such error was harmless.

---

Insured of December 31, 2019.  See R. 15, 24, 172, 1496-1501.  Pasqueno did not raise this error in her opening Brief (d/e 17) and so waived the issue.  See Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000); Jones v. Shalala, 10 F.3d 522, 525 n.4 (7th Cir. 1993); Bollas v. Astrue, 694 F.Supp.2d 978, 9909 (N.D. Ill. 2010).

Pasqueno argues that the ALJ erred in formulating her RFC by not taking into account the ALJ's finding that Pasqueno was moderately limited in the four areas of functioning set forth in Paragraph B of Listings 12.40, 12.06, and 12.15.  The ALJ limited Pasqueno's RFC to routine repetitive tasks and only occasional interactions with the public and coworkers.  R. 20.  Pasqueno argues that the ALJ needed to include in the RFC that Pasqueno was moderately limited in the four Paragraph B functional areas in Listings 12.04, 12.06, and 12.15.  Pasqueno relies on Varga v. Colvin, 794 F.3d 809, 813 (7th Cir. 2015); Yurt v. Colvin, 758 F.3d 850, 858-59 (7th Cir. 2014); O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010), to support this argument.

The cases on which Pasqueno relies all predate the 2016 amendment to the Listings for mental disorders.  Revised Medical Criteria for Evaluation Mental Disorders, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016).  The amendments defined the meaning of "moderate limitation" to be "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  Listing 12.00(F)(2).  Based on this definition, the Seventh Circuit has found that a moderate limitation in Paragraph B functional areas "seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."  Pavlicek v. Saul, 994 F.3d 777, 783

(7th Cir. 2021); accord Jozefyk v. Saul, 923 F.3d 492, 498 (7th Cir. 2019) (citing with approval Sims v. Barnhart, 309 F.3d 424, 431 (7th Cir. 2002) for the proposition that "claimant with moderate limitations in concentration, persistence or pace can perform 'simple and repetitive light work'").  In light of the 2016 amendments to the mental impairment Listings and the more recent decisions in Pavlicek and Jozefyk, the Court finds that the ALJ had substantial evidence to support his decision to address Pasqueno's moderate limitations due to her mental impairments in the RFC by limiting her to routine repetitive tasks and only occasional interactions with the public and coworkers.

Pasqueno argues that the ALJ erred in failing to give greater weight to Dr. Orellana's November 2019 opinions.  The Court disagrees.  The ALJ was required to address the supportability and consistency of Dr. Orellana's opinions based on all the evidence in the record.  20 C.F.R. 404.1520c(b)(2).  The ALJ found the opinions unpersuasive, in part, because she only saw Pasqueno three times.  R. 24.  The ALJ may consider the nature of Pasqueno's treatment relationship in deciding the persuasiveness of her opinions.  20 C.F.R. 4040.1520c(c)(3).  The ALJ further found Dr. Orellana's opinions inconsistent with the notes from her mental status examinations because the notes found normal speech,

appearance, thought processes, thought content.  The ALJ also found Dr.

Orellana's opinions inconsistent with the other largely normal mental status

examination notes in the record.  R. 24.  The ALJ thereby provided

substantial evidence for his evaluation of Dr. Orellana's opinions.

Pasqueno argues that substantial evidence does not support the

ALJ's findings that Pasqueno was moderately limited, rather than more

severely limited, in the Paragraph B areas of functioning in Listings 12.04,

12.06, and 12.15.  Pasqueno essentially asks the Court to reweigh the

evidence.  This the Court cannot do.  <u>Jens</u>, 347 F.3d at 212; <u>Delgado</u>, 782

F.2d at 82.  As discussed above, the ALJ provided substantial evidence to

support his findings.  The Court will not reweigh his evaluation of the

evidence.

THEREFORE, IT IS ORDERED that the Defendant Acting

Commissioner's Motion for Summary Affirmance (d/e 18) is ALLOWED,

Plaintiff Tina Pasqueno's Motion for Summary Judgment (d/e 16) is

DENIED, and the decision of the Defendant Acting Commissioner is

AFFIRMED.  THIS CASE IS CLOSED.

ENTER:   February 11, 2022

_s/ Tom Schanzle-Haskins_
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE